UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────

JESSIE J. BARNES,

                              Plaintiff,

         v.                                                    9:19-CV-0109
                                                              (TJM/ATB)

MR. ANTHONY J. ANNUCCI, Acting State of New
York Department of Corrections and Community
Supervision; et al.,

                              Defendants.

───────────────────────────────────

APPEARANCES:

JESSIE J. BARNES
09-B-2707
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

THOMAS J. McAVOY
Senior United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

        On or about January 28, 2019, plaintiff Jessie J. Barnes ("plaintiff") commenced this

action pro se by filing a complaint and attached exhibits, accompanied by an application to

proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 2.  Since that date, plaintiff

has submitted several other letters and letter motions to the Court concerning various issues.

As relevant to this Decision and Order, the Clerk has now forwarded the following

submissions for review: (1) plaintiff's complaint; (2) plaintiff's IFP application; (3) plaintiff's

request to amend his complaint, Dkt. No. 6 ("Motion to Amend"); and (4) plaintiff's motion for

sanctions against defendants, Dkt. No. 10 ("Motion for Sanctions").

## II.    IFP APPLICATION

Section 1915 of Title 28 of the United States Code ("Section 1915") "permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."[1] *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time . . . of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of N.Y.*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that plaintiff has submitted a completed and signed IFP application, Dkt. No. 2, that demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 3. Accordingly, plaintiff's IFP application is granted.

---

[1] Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. PACER Case Locator, https://pcl.uscourts.gov/pcl/pages/search/findPartyAdvanced.jsf (last visited Mar. 19, 2019). Based on that review, it does not appear that plaintiff had accumulated three strikes for purposes of Section 1915(g) as of the date this action was commenced.

## III.    SUFFICIENCY OF THE COMPLAINT

### A.    Governing Legal Standard for Review of a Pro Se IFP Inmate's Complaint

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that. . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[2] Thus, even if a plaintiff satisfies the financial criteria to commence an action IFP, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the Court may permit him to proceed with the action IFP. *See id*.

Likewise, under 28 U.S.C. § 1915A ("Section 1915A"), a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint. . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding that Section 1915A applies "to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid the filing fee"); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (finding that both Sections 1915(e)(2)(B) and 1915A provide a basis for screening prisoner's complaints).

---

[2]  A complaint is frivolous for purposes of Section 1915 when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

In reviewing a pro se litigant's complaint, the Court has a duty to liberally construe the pleadings, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

4

## B.    Summary of the Complaint

Plaintiff's complaint is comprised of 77 handwritten pages naming 106 individuals as defendants. *See generally* Compl.  The defendants fall into four categories: (1) individuals holding administrative positions within the New York State Department of Corrections and Community Service ("DOCCS"); (2) individuals employed by the New York State Office of Special Investigations ("OSI"); (3) individuals stationed at Upstate Correctional Facility ("Upstate C.F."), Clinton Correctional Facility ("Clinton C.F."), and Five Points Correctional Facility ("Five Points C.F.") (each of which is operated by DOCCS); and (4) individuals employed by the New York State Office of Mental Health ("OMH").  *Id.* at 1-4.  Accompanying plaintiff's complaint is a 42-page exhibit list describing 412 documents.  Dkt. No. 1-3.  Plaintiff also submitted 285 pages worth of actual exhibits.  Dkt. Nos. 1-4 - 1-7.  None of the exhibits, however, are labeled as, for example, "Exhibit 1" or "Exhibit 2," and the complaint does not reference the exhibits.[3]

Plaintiff's complaint is not a model of clarity.  Generally, the allegations involve incidents and conditions of confinement experienced by plaintiff while he was confined in Upstate C.F., Clinton C.F., and Five Points C.F.  That said, however, the allegations are not organized in a coherent manner (for example by defendant, cause of action, or date of occurrence).  The complaint also does not include a section wherein plaintiff lists the causes of action he purports to assert.  Moreover, the source of much confusion is that the complaint is filled with allegations that can be fairly characterized as inflammatory.  For example, the complaint is replete with allegations of name-calling and sweeping accusations that are

---

[3]  The complaint makes reference to a "Directory" or "Drctry," *see, e.g.,* Compl. at 8, but it is not at all clear that is a reference to any exhibit submitted to the Court.

supported only by offensive descriptions of the individual defendants. Notwithstanding these pleading deficiencies, the Court has carefully reviewed the complaint for purposes of Sections 1915 and 1915A, mindful of the Second Circuit's instruction to extend special solicitude to pro se litigants and liberally construe their pleadings. For the sake of brevity and clarity, the Court will not endeavor to summarize each occurrence or condition described in plaintiff's lengthy and disorganized complaint in this part of the Decision and Order. Instead, the relevant allegations supporting each of plaintiff's identifiable causes of action will be described below in Part III.D. at the outset of the analysis of each claim. A list of the 106 defendants and the paragraphs in the complaint in which they are mentioned is set forth below.

| Defendant | Paragraph(s) |
|---|---|
| 1. Anthony Annucci | 8, 24, 115, 232 |
| 2. Kevin Bruen | 8, 115, 228 |
| 3. Charles Quackenbush | 8, 115, 228 |
| 4. Samantha Koolen | 8, 228 |
| 5. Kevin Kortright | 8, 228 |
| 6. Orianna Caravetta | 228 |
| 7. Michelle Liberty | 8, 156, 194, 198, 229-31, 242-43 |
| 8. Don Venettozzi | 8, 115 |
| 9. Anthony Rodriguez | 8, 248 |
| 10. Doe Carrigan | 8, 24, 87 |
| 11. J.R. Blair | 8, 24, 91, 239 |
| 12. Donald Uhler | 1(iv)(b), 1(iv)(c), 3, 9, 21, 23, 23(iii), 25-27, 27(c), 27(d), 28-29, 33-34, 45, 50, 58, 62, 113-16, 121, 123, 127, 139, 158, 168, 173, 183, 198-99, 215, 218, 226 |
| 13. Paul Woodruff | 9, 33, 45, 58, 60, 62, 110, 112-13, 115, 119, 123, 125, 127, 143-44, 168, 174, 183, 197-98, 244, 246 |
| 14. Donald Quinn | 9, 145, 196, 198 |

6

| | |
|---|---|
| 15. Sandra Danforth | 9, 62, 198, 222 |
| 16. Joanne Fitchette | 9, 98, 100, 225 |
| 17. Matthew Kelsh | 9, 40, 45-47, 55, 58 |
| 18. Stacy Dominic | 9, 127 |
| 19. Albert Gravlin | 3, 9, 21, 23(iii), 55, 127, 166, 168, 182-83, 185, 187 |
| 20. John Tatro | 9, 25, 55, 155, 157, 231 |
| 21. Steven Salls, Jr. | 3, 9, 21, 23(iii), 55, 127, 166, 168, 182-83, 185, 187, 198-99, 231 |
| 22. John Doe I, Upstate C.F. Lt. on 6/21/18[4] | 9, 176, 183, 185, 187, 197, 198 |
| 23. Tracy Nelson | 9, 62, 79, 148, 156, 194, 198, 229-31 |
| 24. Denise Bernier | 9, 62, 79 |
| 25. Denise Sauther | 9, 50, 62, 88, 138, 145, 181 |
| 26. Cathleen Cook | 9, 145 |
| 27. Sherri Debyah | 4, 9, 130, 134, 142, 145 |
| 28. Erika Marshall | 4, 9, 85, 130, 132-33, 135-37, 142-43, 145-46, 158-59, 165 |
| 29. Vijay Kumar Mandalaywala | 9, 202-03 |
| 30. Mary Kowalchuk | 9 |
| 31. Geraldine Wilson | 5, 9, 23(iii), 219-20 |
| 32. Elizabeth White | 5, 9, 23(iii), 220 |
| 33. Candy Atkinson | 9, 23(iii), 203 |
| 34. Christy Conklin | 5, 9, 23(iii) |
| 35. Heath Baker | 5, 9, 23(iii), 184, 188, 198, 221 |
| 36. George Waterson | 5, 9, 23(iii), 53-54 |
| 37. Paul Fletcher | 9, 25, 45-47, 122, 126-27, 158, 160, 163-64, 166, 168-72, 198, 201 |
| 38. Brett Derouchie | 9, 23(iii), 25, 111 |
| 39. Bruce Truax | 9, 80-82 |
| 40. Scott Santamore | 9, 25-, 67-69, 89 |

---

[4] Plaintiff's complaint provides some identifying details for each of the seven "Doe" defendants. For the sake of clarity, in this Decision and Order the Court has further identified each of the Doe defendants by assigning them Roman numerals. The Clerk of the Court is respectfully directed to modify the docket to add the corresponding Roman numeral to each of the Doe defendants as provided in this table.

| | |
|---|---|
| 41. Randal Smith | 9, 25, 53-55, 57-58, 60, 86, 241-42, 244 |
| 42. Richard Scott | 9, 70-71, 74, 76 |
| 43. William Hoffinagle | 9, 25, 107 |
| 44. Thomas Smith | 9, 25, 56, 181, 190 |
| 45. Marshall Bush | 9, 175, 177, 179, 183, 193, 198 |
| 46. Lisa Stickney | 9, 240 |
| 47. Todd Debyah | 9, 25, 130, 142, 145 |
| 48. Dustin Hollenbeck | 3, 9, 21, 25, 31-32, 34, 36, 38-40, 43-47, 49-52, 60-61, 65-66, 68-72, 74-76, 78, 84, 118-22, 128-30, 146, 151, 155, 157, 162-63, 169, 176, 180-81, 189, 197-98, 201 |
| 49. Justin Russell | 9, 21, 25, 68-69*, 84*, 120-22, 128, 130, 154-55, 157, 176, 180-81, 197-98<br>* identified as "Joseph" Russell |
| 50. Jonathan Howell | 9, 25, 121-22, 128, 130, 153, 161-62, 201 |
| 51. Kristi Preve | 4, 9, 25, 85 |
| 52. Austin Helms | 9, 25, 51-52, 65, 78, 81, 84 |
| 53. Mark Baily | 3, 9, 25, 78, 92-93, 95-97, 99, 102, 107, 109,155, 157 |
| 54. Jessica Page | 4, 9, 25, 35, 62, 65-66, 73, 78, 83, 85, 87, 128-30, 138, 150 |
| 55. Benjamin Page | 9, 70-72, 74, 76 |
| 56. Robert Paige, Jr. | 9, 25, 90-91, 239 |
| 57. Elias Guarin, III | 9, 25, 42-44, 78, 96 |
| 58. Deborah Marshall | 9, 25, 78, 85, 129, 149 |
| 59. Eric Marshall | 3, 25, 136, 146, 175, 179, 183, 185-87, 198 |
| 60. Jarrod Cook | 9, 25, 99, 102, 106-07 |
| 61. Wes Lincoln | 9, 25, 99,102, 107 |
| 62. James Trombley | 9, 25, 98-99, 104-05, 107 |
| 63. Jon Ayers | 9, 25, 71, 72, 74, 76, 78, 84, 107, 141 |
| 64. Robert Lamicia, II | 9, 25, 99, 102, 106-08 |
| 65. Eric LaBombard | 9, 25, 78, 92*, 96*, 109*<br>* identified as "Chad" LaBombard |
| 66. Nathan Locke | 3, 9, 25, 65, 78, 84, 97-99, 101, 104-05, 109, 128, 130, 138, 152, 198 |

| | |
|---|---|
| 67. Ronald Pryce | 9, 52, 81, 175 |
| 68. Brian Gary | 9, 54, 55 |
| 69. Cory Law | 9, 72, 74, 76 |
| 70. Jeffery Clemo | 9, 25, 37-40, 43-44, 84 |
| 71. James Healy | 9, 55 |
| 72. Charles Champagne | 9, 55, 169, 198 |
| 73. Kenneth Ellsworth | 9, 55 |
| 74. John Doe II, Upstate C.F. CO on 6/22/18 | 183, 185, 186, 187, 198 |
| 75. John Doe III, Upstate C.F. CO on 6/22/18 | 183, 185, 186, 187, 198 |
| 76. John Doe IV, Upstate C.F. CO on 6/22/18 | 183, 185, 186, 187, 198 |
| 77. Nancy Smith | 9, 23(iii), 222 |
| 78. Tanie Harrigan | 9, 194, 202 |
| 79. Cynthia Fish | 2, 224 |
| 80. Lisa Barse | 9, 224 |
| 81. Tammy Febi | 9, 224 |
| 82. Cheryl Dumas | 9, 224 |
| 83. Jessica Dumas | 4, 14, 130, 134, 178, 192, 205-07 |
| 84. Joanne Waldron | 14, 204, 218 |
| 85. Rachal Bryant | 15, 212 |
| 86. Jeanluc Fortin | 15, 211 |
| 87. John or Jane Doe V, Clinton C.F. OMH Counsel on 6/29/18 | 15 |
| 88. John Doe VI, Clinton C.F. OMH Doctor or Psychologist on 7/2/18 | 15, 216 |
| 89. Jane Doe VII, Clinton C.F. RN (medication delivery) on 6/27/7/2/18 | 210, 212 |
| 90. Courtney Malark | 12, 208-09 |
| 91. David Viau | 9, 223, 229 |
| 92. Lawrence Friot | 13, 234, 236-38 |

| 93. Eva Tants[5] | 13, 283 |
|---|---|
| 94. Lawrence Zerniak | 11, 23(iii), 30, 33, 58, 60, 215 |
| 95. Carl Koenigsmann | 8, 222 |
| 96. Vernon Baldwin | 8 |
| 97. Douglas Botsford | 8, 24, 232 |
| 98. Jeff McKoy | 8, 24, 115, 232 |
| 99. Joseph Bellinier | 24, 115, 116 |
| 100. Roxanne Leclerc | 4, 10, 35-36, 50, 61-64, 78-79, 85, 87, 91, 129, 234, 237 |
| 101. Tatyana Rozenfeld | 16, 213 |
| 102. Michelle Labare | 4, 9, 35, 78, 85, 129 |
| 103. Jessica Seaman | 9, 25, 78, 85 |
| 104. Tanya Brown | 4, 9, 25, 85 |
| 105. Melissa Morris | 4, 9, 25, 85 |
| 106. K. Burwell | 9, 25, 117 |

Liberally construed, plaintiff's complaint asserts the following causes of action: (1) Eighth Amendment excessive force and failure to intervene; (2) Eighth Amendment deliberate medical indifference; (3) First Amendment retaliation; (4) First Amendment mail interference; (5) Fourteenth Amendment due process; (6) Eighth Amendment conditions of confinement; (7) First Amendment access to the court; and (8) harassment.

## C.    Governing Legal Standards

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section

---

[5]  The complaint spells this individual's last name as both "Tants," Compl. at 4, and "Tanis," *id.* at 11, 72. For the sake of consistency, the Court has spelled the name as "Tants" in this Decision and Order.

1983 itself creates no substantive rights[ but] provides . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Where individuals are sued in their capacities as supervisors, the Second Circuit has held that they may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[6]

_____

[6] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see*

## 1. Eighth Amendment Excessive Force and Failure to Intervene

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This protection includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[7] In addition to the persons directly involved in the use of force, "[l]aw enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)). "Liability . . . attach[es] only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take

---

*also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)). Absent any authority to the contrary, the Court has applied *Colon* in this case.

[7] In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)).

reasonable steps to intervene." *Jean-Laurent*, 540 F. Supp. 2d at 512 (citing *O'Neill*, 839 F.2d at 11-12).

## 2. Eighth Amendment Deliberate Medical Indifference

As noted above, the Eighth Amendment prohibits punishment that is "incompatible with the evolving standards of decency that mark the progress of a maturing society[,] or which involve the unnecessary and wanton infliction of pain[.]" *Estelle*, 429 U.S. at 102-03 (1976) (internal quotation marks and citations omitted)). While the Eighth Amendment "does not mandate comfortable prisons, . . . neither does it permit inhumane ones[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. Failure to provide inmates with medical care, "[i]n the worst cases, . . . may actually produce physical torture or lingering death, [and] . . . [i]n less serious cases, . . . may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* (internal quotation marks and citations omitted).

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by inflicting cruel and unusual punishment must satisfy both objective and subjective requirements. *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *Price v. Reilly*, 697 F. Supp. 2d 344, 356 (E.D.N.Y. 2010). To meet the objective requirement, the alleged deprivation must be "sufficiently serious." *Farmer*, 511 U.S. at 844; *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he objective test asks whether the inadequacy in medical care is sufficiently serious."). Factors informing this inquiry include "whether a

reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin*, 467 F.3d at 280 (internal quotation marks and alterations omitted). Determining whether a deprivation is sufficiently serious requires a court to examine the seriousness of the deprivation, and whether the deprivation represents "a condition of urgency, one that may produce death, degeneration, or extreme pain[.]" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted). Importantly, it is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden*, 186 F.3d at 262. "In medical-treatment cases . . ., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.*; *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280

(citing *Farmer*, 511 U.S. at 839-40).

### 3. First Amendment Retaliation

Claims of retaliation find their roots in the First Amendment. *Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). To state a cognizable First Amendment retaliation claim, a plaintiff's complaint must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill*, 389 F.3d at 380 (internal quotation marks omitted); *accord, Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Courts must approach claims of retaliation "'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

### 4. First Amendment Mail Interference

The First Amendment provides inmates protection "to the free flow of incoming and outgoing mail." *LeBron v. Swaitek*, No. 05-CV-0172, 2007 WL 3254373, at *6 (N.D.N.Y. Nov. 2, 2007) (internal quotation marks omitted). "The boundary between an inmate's First Amendment right to free speech and the ability of prison officials to open or otherwise interfere with an inmate's mail is not precise." *Cancel v. Goord*, No. 00-CV 2042, 2001 WL 303713 (S.D.N.Y. Mar. 29, 2001). This right, however, must yield to the legitimate penological interests of prison officials when mail is monitored for the purpose of ensuring order in the prison by preventing illegal activities. *Duamutef v. Hollins*, 297 F.3d 108, 112 (2d

Cir. 2002) (*citing*, *inter alia*, *United States v. Workman*, 80 F.3d 688, 699 (2d Cir. 1996)).

"The [Supreme] Court has counseled judicial restraint in the federal courts' review of prison policy and administration, noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.'" *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995) (*quoting Turner v. Safley*, 482 U.S. 78, 84 (1987)).

Actions taken by prison officials directed toward inmate mail are subject to the overarching consideration that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Applying this precept, "[c]ourts have consistently afforded greater protection . . . to outgoing mail than to incoming mail." *Davis*, 320 F.3d at 351. Nonetheless, the Second Circuit has held that "'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Workman*, 80 F.3d at 698 (*quoting Wolfish v. Levi*, 573 F.2d 118, 130 n.27 (2d Cir. 1978), *rev'd in part on other grounds sub nom., Bell v. Wolfish*, 441 U.S. 520 (1979)).

### 5. Fourteenth Amendment Due Process

The Due Process Clause of the Fourteenth Amendment contains both a substantive and procedural component. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Substantive due process "bars certain arbitrary, wrongful government action[] regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotation marks omitted). Because the Supreme Court has "been reluctant to expand the concept of substantive due process . . .[,] where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior,

16

that Amendment, and not the more generalized notion of substantive due process, must be the guide for analyzing the[] claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal quotation marks omitted).

With respect to procedural due process, to state a cognizable claim under Section 1983 arising out of a disciplinary hearing, a complaint must allege that the plaintiff (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court determined that, to establish a liberty interest deprivation in the context of a prison disciplinary proceeding resulting in removal of an inmate from the general prison population, a plaintiff must demonstrate that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *Tellier*, 280 F.3d at 79-80; *Hynes*, 143 F.3d at 658. The prevailing view in this circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *See, e.g., LaBounty v. Coombe*, No. 95-CV-2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin*, No. 94-CV-0985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001). Accordingly, to find that plaintiff's complaint states a cognizable procedural due process claim, the Court must only inquire whether the allegations related to the conditions of plaintiff's disciplinary confinement rise to the level of an atypical and significant hardship

17

under *Sandin*.

Assuming the Court finds that plaintiff's complaint sufficiently alleges that he was deprived of a liberty interest under *Sandin*, the next question is whether the complaint sufficiently alleges that plaintiff was denied the required procedural safeguards set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). In its decision in *Wolff*, the Supreme Court held that the constitutionally mandated due process requirements include (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *Wolff*, 418 U.S. at 564-69; *see also Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). In addition, a hearing officer's disciplinary determination must garner the support of at least "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Luna*, 356 F.3d at 487-88. The due process clause of the Fourteenth Amendment also guarantees that "[a]n inmate subject to a disciplinary hearing is entitled to. . . an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing *Wolff*, 418 U.S. at 570-71). The Second Circuit has explained that its "conception of an impartial decisionmaker is one who, *inter alia*, does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990).

### 6. Eighth Amendment Conditions of Confinement

A claim alleging that prison conditions have violated the Eighth Amendment must

satisfy both an objective and a subjective requirement. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013); *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.'" *Jolly*, 76 F.3d at 480 (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)); *see also Walker*, 717 F.3d at 125 ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). In a prison setting, basic needs include "food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (citing, *inter alia*, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). As to the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference.'" *Jolly*, 76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Walker*, 717 F.3d at 125; *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Walker*, 717 F.3d at 125; *Waldo*, 1998 WL 713809, at *2.

### 7. First Amendment Access to the Courts

Undoubtedly, prisoners have a constitutional right to meaningfully access the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977); *accord, Lewis v. Casey*, 518 U.S. 343, 350 (1996) ("The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts*." (emphasis in original)). This right is implicated when prison officials

"actively interfer[e] with inmates' attempts to prepare legal documents, or file them[.]" *Lewis*, 518 U.S. at 350 (citations omitted). A plaintiff asserting a denial of access to courts claim must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim." *Davis*, 320 F.3d at 351 (internal quotation marks omitted). To establish a denial of access to courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. *Davis*, 320 F.3d at 351. Second, plaintiff must demonstrate that he suffered an actual injury. *Id.*

**D.** **Analysis**

**1. Excessive Force/Failure to Intervene**

**a. August 23, 2011; September 9, 2011**

The complaint alleges that on August 23, 2011, an unidentified individual placed a plastic bag over plaintiff's head and that, as a result of an excessive use of force on that same date, plaintiff suffered a fractured fibula. Compl. at 13. The complaint also alleges that plaintiff was subjected to excessive force on September 9, 2011, resulting in the amputation of the tip of his left ring finger. *Id.* at 13, 15.

To the extent plaintiff intended to assert Eighth Amendment excessive force claims based upon the foregoing allegations, the claims are dismissed for two reasons. First, none of the named defendants in the action are implicated in the incidents. Because "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983," *Wright*, 21 F.3d at 501, the complaint's failure to allege that any of the defendants were responsible or otherwise involved in the incidents on August 23, 2011, and September 9, 2011, justifies dismissal of the excessive force claims arising on

20

those dates.

In any event, however, plaintiff's claims are precluded by the terms of a settlement agreement in a lawsuit filed by plaintiff in this District in 2011. In particular, in *Barnes v. Fischer*, No. 11-CV-0583 (N.D.N.Y. filed May 25, 2011), the parties entered into a settlement agreement on July 18, 2014, wherein plaintiff expressly agreed "not to commence any lawsuit in any court, state or federal, related to any cause of action against any DOCCS employee, DOCCS, or the State of New York, which plaintiff believes has accrued prior to the execution of this Stipulation." *Barnes v. Fischer*, No. 11-CV-0583, Dkt. No. 182 at 4. Although plaintiff later sought to vacate that provision of the agreement, Senior District Judge Norman A. Mordue denied plaintiff's motions. *Barnes v. Fischer*, No. 11-CV-0583, Dkt. Nos. 183, 184, 197, 206. Like Judge Mordue, this Court concludes that the language of the settlement agreement prohibiting plaintiff from filing any lawsuits that accrued prior to the date of the execution of the agreement is unambiguous and that the "words have 'a definite and precise meaning, unattended by danger of misconception in the purport of the [Stipulation] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Barnes v. Fischer*, No. 11-CV-0583, Dkt. No. 206 at 5 (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010)). Accordingly, plaintiff's excessive force claims arising from incidents that occurred on August 23, 2011, and September 9, 2011, are dismissed as precluded by the terms of the settlement agreement in *Barnes v. Fischer*, No. 11-CV-0583.

### b. February 8, 2016

Plaintiff's complaint alleges that on February 8, 2016, defendants Helms and Hollenbeck removed plaintiff from his cell at Upstate C.F.  Compl. at 22.  During the pat-frisk of plaintiff, defendant Hollenbeck unnecessarily and without provocation grabbed plaintiff's genitals and buttocks.  *Id.*  When plaintiff was being returned to his cell, defendant Hollenbeck bent plaintiff's fingers back, causing plaintiff to instinctively pull his hand away, at which point defendants Hollenbeck and Helms "excessively pulled the [plaintiff] out of the tray-slot in a needless application of use of excessive force."  *Id.*  Defendant Pryce witnessed the use of force and did not intervene.  *Id.*  Plaintiff contends that defendant Hollenbeck's use of force was in retaliation for a grievance plaintiff filed against him on February 1, 2016.  *Id.* at 21-22.  Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that defendants Helms, Hollenbeck, and Pryce must respond to plaintiff's excessive force and failure to intervene claims arising from the use of force incident on February 8, 2016.  This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claims can survive a properly filed dispositive motion.

### c. March 23, 2016

Plaintiff's complaint alleges that at approximately 1:15PM on March 23, 2016, defendant Hollenbeck aggressively pat-frisked him, grabbed his genitals, "senselessly ben[t] [his] fingers," and pulled unnecessarily on the retention strap attached to plaintiff's handcuffs. Compl. at 26-27.  Defendants Santamore and Russell witnessed defendant Hollenbeck's use of force.  *Id.*  Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must

be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendants Hollenbeck, Santamore, and Russell must respond to plaintiff's excessive force and failure to intervene claims arising from the use of force incident on March 23, 2016. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claims can survive a properly filed dispositive motion.

### d. March 26, 2016

Plaintiff's complaint alleges that when he was returned to his cell by defendants Ayers after a cell search on March 26, 2016, defendants Ayers, Law, Hollenbeck, Benjamin Page, and Scott "pull[ed] [plaintiff's] [hand]cuffed hands needlessly with [the] retention strap."[8] Compl. at 28. Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendants Ayers, Law, Hollenbeck, Benjamin Page, and Scott must respond to plaintiff's excessive force claims arising from the use of force incident on March 26, 2016. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claims can survive a properly filed dispositive motion.

### e. April 12, 2016

Plaintiff's complaint alleges that on April 12, 2016, between 5:30PM and 6:15PM, plaintiff was removed from his cell and escorted to the barber by defendant Truax and Corrections Officers Fleury and Stephens. Compl. at 29. While plaintiff was seated in the barber chair, plaintiff remained in handcuffs. *Id.* Defendants Truax, Helms, and Pryce, along

---

[8] The complaint also alleges that an individual identified as "Bruce Dimick" was involved in the use of force incident on March 23, 2016. Compl. at 28. Because the complaint does not include that individual in the list of 106 defendants, Compl. at 1-4, the Court does not construe the complaint as including Bruce Dimick as a defendant in this action.

23

with Corrections Officers Fleury, Stephens, and Lord, witnessed the inmate-barber choke plaintiff for an unspecified amount of time and laughed at plaintiff. *Id.* Defendant Truax eventually instructed the inmate-barber to stop the assault. *Id.* Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendants Truax, Helms, and Pryce must respond to plaintiff's failure to intervene claims arising from the physical assault plaintiff suffered by another inmate on April 12, 2016.[9] This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claims can survive a properly filed dispositive motion.

### f. January 15, 2017

Plaintiff's complaint alleges that, on January 15, 2017, upon returning to his cell after his cell had been searched, he requested to speak to a sergeant. Compl. at 32. Defendant Baily then struck plaintiff in the face with a closed fist in retaliation for the grievances plaintiff had filed against Upstate C.F. staff. *Id.* at 32-33. Defendants LaBombard and Guarin joined defendant Baily in the assault, kicking, slapping, punching, and stomping on plaintiff. *Id.* at 33. Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendant Baily, LaBombard, and Guarin must respond to plaintiff's excessive force claims arising from the use of force incident on January 15, 2017. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claims can survive a properly filed

---

[9] Although the allegations in the complaint implicate Corrections Officers Fleury, Stephens, and Lord in the incident at the barber shop on April 12, 2016, the complaint does not include those individuals in the list of 106 defendants. Compl. at 1-4, 29. Accordingly, the Court does not construe the complaint as including those individuals as defendants in the action.

dispositive motion.

### g. February 13, 2017

Plaintiff's complaint alleges that he was assaulted on February 13, 2017, by defendants Locke, Trombley, Cook, Lamica, Ayers, Baily, Lincoln, and Hoffinagle after he was returned to his cell following a cell search. Compl. at 34-35. Defendant Locke allegedly instructed defendant Trombley to "'take [plaintiff] down,'" and defendants Locke, Trombley, Cook, Lamica, Ayers, Baily, Lincoln, and Hoffinagle all physically assaulted plaintiff after he was initially "slammed . . . to [the] floor." *Id.* According to plaintiff, defendant Derouchie witnessed the assault and did not intervene to assist plaintiff. *Id.* at 35. Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendants Locke, Trombley, Cook, Lamica, Ayers, Baily, Lincoln, Hoffinagle, and Derouchie must respond to plaintiff's excessive force and failure to intervene claims arising from the use of force incident on February 13, 2017. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claims can survive a properly filed dispositive motion.

### h. June 22, 2018

Plaintiff's complaint alleges that in the afternoon of June 22, 2018, defendants Salls, Doe I, Doe II, Doe III, Doe IV, Marshall Bush, and Eric Marshall released a chemical agent into plaintiff's cell before using excessive force to extract him from his cell. Compl. at 57. The same defendants later escorted plaintiff back to his cell, and after the handcuffs were removed from plaintiff's hands, defendant Eric Marshall grabbed plaintiff's right hand and bent his ring finger until plaintiff heard it crack. *Id.* at 58. One of the Doe defendants then

25

slammed the door of the tray slot on plaintiff's forearm. *Id.* Defendants Salls, Marshall Bush, Doe I, and two other Doe defendants witnessed the assault by defendants Eric Marshall and did not intervene. *Id.*

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendants Salls, Doe I, Doe II, Doe III, Doe IV, Marshall Bush, and Eric Marshall must respond to plaintiff's excessive force and failure to intervene claims arising from the use of force incident on June 22, 2018. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claims can survive a properly filed dispositive motion.

Because plaintiff's excessive force and failure to intervene claims arising on June 22, 2018, are asserted against four individuals (defendants Doe I, Doe II, Doe III, and Doe IV) whose names are not known to plaintiff, service of process cannot be effected on them unless and until these individuals have been identified by name. If plaintiff wishes to pursue his claims against defendants Doe I, Doe II, Doe III, and Doe IV, he must take reasonable steps to ascertain through discovery the identity of those individuals. Upon learning the identities of the unnamed defendants, plaintiff must amend the operative complaint to properly name those individuals as parties. If plaintiff fails to ascertain the identity of the Doe defendants so as to permit timely service of process, all claims against those individuals will be dismissed.[10]

---

[10] Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days. N.D.N.Y. L.R. 4.1(b).

## 2. Deliberate Medical Indifference

### a. February 8, 2016

Plaintiff's complaint alleges that, following the use of force incident involving two corrections officers on February 8, 2016, defendants Randal Smith and Waterson arrived at plaintiff's cell one hour later and spoke rudely to plaintiff.  Compl. at 22.  At approximately 11:15AM, plaintiff requested medical care from defendant Gary and Matthew King because his hands and wrists were still stinging and burning.[11]  *Id.* at 23.  According to plaintiff, at 11:45AM, defendants Randal Smith and Waterson returned to plaintiff's cell but neither provided him with medical care.  *Id.*  Between 11:30AM and 6:00PM on February 8, 2016, defendants Gary, Champagne, Ellsworth, Healy, Randal Smith, John Tatro, Salls, and Kelsh, as well as Nicholas Tatro and Craig Tatro, conspired to deprive plaintiff of medical care to conceal the extent of plaintiff's injuries sustained earlier in the day.[12]  Compl. at 23.

Even liberally construed, plaintiff's complaint fails to plausibly allege that he suffered a sufficiently serious deprivation on February 8, 2016.  As alleged in the complaint, plaintiff sustained injuries that resulted in his wrists and hands stinging and burning, but there are no further allegations concerning the injuries and certainly none that rise to the level of an urgent condition or one "that [would] produce death, degeneration, or extreme pain[.]"  *Hill*, 657 F.3d at 122 (internal quotation marks omitted).  In addition, the complaint does not allege that any

---

[11]  Although the complaint implicates Matthew King in the failure to provide plaintiff medical assistance on February 8, 2016, that individual is not listed as one of the 106 defendants in the complaint.  Compl. at 1-4, 23.  Accordingly, the Court does not construe the complaint to include Matthew King as a defendant in the action.

[12]  Although the complaint implicates Nicholas Tatro and Craig Tatro in the failure to provide plaintiff medical assistance on February 8, 2016, those individuals are not listed as two of the 106 defendants in the complaint.  Compl. at 1-4, 23.  Accordingly, the Court does not construe the complaint to include Nicholas Tatro or Craig Tatro as defendants in the action.

of the defendants denied plaintiff medical treatment with deliberate indifference to a serious risk of harm to plaintiff. Again, the only allegations concerning plaintiff's condition describe stinging and burning in plaintiff's wrists and hand. Even assuming that each of the defendants implicated by plaintiff's claim were aware of plaintiff's discomfort, their failure to obtain immediate medical attention on behalf of plaintiff does not rise to the level of deliberate medical indifference under the Eighth Amendment.

The complaint also alleges that on "February 4, 2016," between 12:00PM and 1:15PM, plaintiff informed defendants Uhler, Paul Woodruff, Sandra Woodruff, Kelsh, Zerniak, and Randal Smith that he was being denied medical care for injuries he sustained in the use of force incident on February 8, 2016. Compl. at 23-24. To the extent plaintiff's complaint is construed to assert a medical indifference claim based on these allegations, the claim is dismissed as frivolous. It is an impossibility that on February 4, 2016, plaintiff informed anyone of his injuries he sustained in an incident that happened four days in the future.

For the foregoing reasons, plaintiff's medical indifference claims asserted against defendants Randal Smith, Waterson, Gary, Champagne, Ellsworth, Healy, John Tatro, Salls, Kelsh, Uhler, Sandra Woodruff, Paul Woodruff, and Zerniak are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b. February 13, 2017

Plaintiff's complaint alleges that, following the assault by defendants Locke, Trombley, Cook, Lamica, Ayers, Baily, Lincoln, and Hoffinagle on February 13, 2017, defendant Baker examined plaintiff's eye that was swollen shut. Compl. at 68. Because there are no other

allegations in the complaint concerning plaintiff's injury or the medical care defendant Baker did (or did not) provide to plaintiff on February 13, 2017, any deliberate medical indifference claim purportedly asserted in the complaint is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c. June 22, 2018

Plaintiff's complaint alleges that, following the assault by defendant Eric Marshall on June 22, 2018 (wherein defendant Eric Marshall bent plaintiff's right ring finger until it cracked), defendant Baker examined plaintiff's finger and concluded that it was fine. Compl. at 58. The complaint also alleges that, during the examination, defendant Baker used racial slurs against plaintiff and told him that there was "nothing wrong with [him], [he had] full movement and there [was] no swelling." *Id.* Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendant Baker must respond to plaintiff's deliberate medical indifference claim arising from defendant Baker's examination of plaintiff's right ring finger on June 22, 2018. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claim can survive a properly filed dispositive motion.

### d. Defendant Mandalaywala

Plaintiff's complaint alleges that defendant Mandalaywala, a doctor stationed at Upstate C.F., examined plaintiff's right ring finger on June 25, 2018, following the use of force incident on June 22, 2018, involving defendant Eric Marshall (wherein defendant Eric Marshall bent plaintiff's right ring finger until it cracked). Compl. at 63. Plaintiff alleges that he showed defendant Mandalaywala how his finger "bends to the side as a result of [the] use

of force on 6/22/18," and plaintiff explained to defendant Mandalaywala how the injury occurred. *Id.* Defendant Mandalaywala did not treat plaintiff's injury until August 1, 2018. *Id.* The complaint alleges that defendant Mandalaywala acted "with his culpable state of mind disregard for [plaintiff]'s life health, safety or welbeing." *Id.* (errors in original). Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendant Mandalaywala must respond to plaintiff's deliberate medical indifference claim arising from defendant Mandalaywala's failure to treat plaintiff's right ring finger until August 1, 2018. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claim can survive a properly filed dispositive motion.

### e. Defendant Malark

Plaintiff's complaint alleges that plaintiff was transferred to Clinton C.F.'s Observational Mental Health Unit ("OMHU") on June 26, 2018. Compl. at 64. Upon his arrival, plaintiff was screened by defendant Malark, who observed that there was something wrong with plaintiff's right ring finger. *Id.* at 64-65. Defendant Malark then told plaintiff that she could "get [plaintiff] in to see [a] provider" for treatment but advised plaintiff that complaining about his injured finger may be futile because OMHU employees do not address inmates' medical issues. *Id.* at 64-65. Defendant Malark did not include in plaintiff's record any reference to the discussion she had with plaintiff about plaintiff's finger. *Id.* at 65.

To the extent plaintiff purports to assert a deliberate medical indifference claim against defendant Malark based on the foregoing allegations, it must be dismissed. Even liberally construed, plaintiff's complaint fails to plausibly allege that defendant Malark acted with

deliberate indifference to plaintiff's injury.  In particular, it is not clear from the complaint the extent of the injury to plaintiff's finger at the time defendant Malark spoke with plaintiff, but in any event, plaintiff's claim appears to be based on a suggestion that, by advising plaintiff that OMHU staff does not address medical issues, defendant Malark acted with deliberate indifference.  This is not sufficient to plausibly allege that defendant Malark disregarded a serious risk to plaintiff's health or safety.  Indeed, defendant Malark offered to assist plaintiff in getting treated by a "provider."  Plaintiff's conclusory allegation that defendant Malark acted "with a culpable state of mind" does not satisfy the pleading standard for a deliberate medical indifference claim.  Accordingly, plaintiff's deliberate medical indifference claim asserted against defendant Malark is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### f. Defendants Doe VII, Bryant, and Fortin

Plaintiff's complaint alleges that between June 27, 2018 and July 2, 2018, while he was housed in Clinton C.F.'s OMHU, plaintiff spoke with "all of the Jane Doe or John Doe medical nurses delivering [his] medical medications about [his] right ring finger and if they can put [him] in to see the doctor."  Compl. at 65.  According to plaintiff, those unidentified individuals "gave [him the] cold should[er] or brush off with deliberate . . . indifference."  *Id.* Similarly, defendant Fortin allegedly responded "rude[ly]" and "disrespectful[ly]" to plaintiff when he requested her assistance in obtaining medical treatment for his finger on June 26, 2018 and June 27, 2018.  *Id.*  Defendant Bryant, a nurse who delivered plaintiff medication between June 27, 2018 and July 2, 2018, wished plaintiff "good luck [in] getting treatment for [his] finger . . . while [in the OMHU]" because OMHU staff does not treat inmates for medical

injuries.  *Id.*

The foregoing allegations are not sufficient to support a plausible deliberate medical indifference claim against any of the defendants implicated.  The complaint does not allege what kind of condition plaintiff's finger was in when he requested assistance from defendants Doe VII, Fortin, and Bryant.  In addition, even assuming plaintiff suffered a serious medical condition at the relevant times, none of the defendants are alleged to have acted with serious disregard to a condition of urgency.  Conclusory allegations that defendants acted with "deliberate indifference" are not enough to support a cognizable Eighth Amendment claim. Accordingly, plaintiff's deliberate medical indifference claims asserted against defendants Doe VII, Fortin, and Bryant are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### g.  Defendants Wilson and White

Plaintiff's complaint alleges that, since he returned to Upstate C.F. on July 2, 2018, defendants Wilson and White have denied plaintiff "all medical care" and that he has only been advised to "drink more water or use soap and water" and told that "there is never anything wrong with [him]."  Compl. at 68.  These allegations do not plausibly allege that plaintiff suffered from a serious medical condition or that either defendant Wilson or White acted with the requisite deliberate indifference to plaintiff's health and safety.  The allegations are vague and do not describe any specific medical condition of which defendants knew or should have been aware.  Moreover, the inflammatory and conclusory descriptions of defendants' conduct do not, alone, plausibly suggest deliberate indifference.  Accordingly, plaintiff's deliberate medical indifference claims asserted against defendants Wilson and White are dismissed for failure to state a claim upon which relief may be granted pursuant to

32

Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Retaliation

#### a. February 8, 2016 – Defendant Hollenbeck

Plaintiff's complaint alleges that defendant Hollenbeck used unnecessary and excessive force on February 8, 2016, against plaintiff in retaliation for the grievance plaintiff filed against him on February 1, 2016, accusing him of sexual harassment. Compl. at 21, 22. Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendant Hollenbeck must respond to plaintiff's retaliation claim arising from the use of force incident on February 8, 2016. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claim can survive a properly filed dispositive motion.

#### b. Misbehavior Reports Issued to Plaintiff by Defendant Leclerc on February 8, 2016, February 24, 2016, February 25, 2016, and March 23, 2016

Plaintiff's complaint alleges that defendant Leclerc issued plaintiff a misbehavior report on February 8, 2016, in retaliation for plaintiff filing a grievance on February 1, 2016, against defendant Hollenbeck complaining of sexual harassment. Compl. at 24-25. Defendant Leclerc allegedly issued plaintiff similarly retaliatory misbehavior reports on February 24, 2016, February 25, 2016, and March 23, 2016. *Id.* at 25.

These are allegations are not sufficient to state a plausible retaliation claim against defendant Leclerc. There are no allegations that defendant Leclerc was aware, or how she became aware, of the grievance plaintiff filed against defendant Hollenbeck. In addition, it is not alleged whether defendant Leclerc was some how implicated in the grievance that

allegedly gave rise to the retaliatory misbehavior reports.  *See Guillory v. Ellis*, No. 11-CV-0600, 2014 WL 4365274, at *18 (N.D.N.Y. Aug. 29, 2014) ("It is difficult to establish one defendant's retaliation for complaints against another defendant." (citing cases)).  Even assuming defendant Leclerc knew of the grievance plaintiff had filed against defendant Hollenbeck, however, there are also no allegations in the complaint plausibly suggesting that the grievance was the motivating reason behind issuing the misbehavior reports to plaintiff.  Instead, most the allegations supporting this retaliation claim can be fairly characterized as inflammatory rhetoric that do not describe or recite facts.  *See, e.g.,* Compl. at 24-25 (describing defendant Leclerc as "wicked and evil," "a queen bee of indecency and a master m[a]nipulator of deceit and unsavoriness," and "old over the hill vile and foul user capable of being very cruel and down[]right rotten" (internal quotation marks omitted)).  Accordingly, plaintiff's retaliation claims asserted against defendant Leclerc based on allegations of retaliatory false misbehavior reports on February 8, 2016, February 24, 2016, February 25, 2016, and March 23, 2016, are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c. August 15, 2016

Plaintiff's complaint alleges that defendant Paige opened plaintiff's outgoing mail in retaliation for being a named defendant in "Barnes v. Fischer 2018 U.S. Dist. LEXIS [44503] (N.D.N.Y. Mar. 16, 2018)."  Compl. at 32.  Even assuming for the sake of this Decision and Order that this allegation plausibly suggests that plaintiff engaged in protected activity and that opening an inmate's mail constitutes adverse action, it is not sufficient to satisfy the causation element of a First Amendment retaliation claim.  "Barnes v. Fischer 2018 U.S. Dist. LEXIS [44503] (N.D.N.Y. Mar. 16, 2018)" refers to a civil rights lawsuit plaintiff commenced in

this District in 2013. *Barnes v. Fischer*, No. 13-CV-0164 (N.D.N.Y. filed Feb. 12, 2013). Although defendant Paige is a named defendant in that action, the complaint in this action only conclusorily alleges that defendant Paige opened plaintiff's mail out of retaliatory animus. Without more, the complaint fails to state a plausible retaliation claim against defendant Paige. Accordingly, plaintiff's retaliation claim arising from allegations that defendant Paige opened plaintiff's outgoing mail on August 15, 2016, is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### d. January 15, 2017

Plaintiff's complaint alleges that defendant Baily assaulted him on January 15, 2017, in retaliation for the grievances plaintiff filed against Upstate C.F. staff. Compl. at 32. Such allegations do not support a cognizable retaliation claim. The complaint fails to allege which grievances motivated defendant Baily to assault plaintiff, who the grievances implicated, when they were filed, or whether (and how) defendant Baily learned of the grievances. Accordingly, plaintiff's retaliation claim asserted against defendant Baily arising from allegations that defendant Baily assaulted plaintiff on January 15, 2017, in retaliation for plaintiff filing grievances is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### e. February 19, 2017

Plaintiff's complaint alleges "there is no secret or coincidence that what took place on 2/19/17 is clear and convincing proof that [plaintiff] was targeted for mistreatment by [defendants] Baily and . . . Locke among others . . . based on his filing of [grievances

complaining of] cell searches and excessive use of force on 1/15/17." Compl. at 33 (internal quotation marks omitted). To the extent these allegations are construed to assert a retaliation cause of action against defendants Baily and Locke, it must be dismissed because there are no allegations what actually "took place on [February 19, 2017]." *Id.* In addition, there are no allegations when plaintiff filed the grievances to which he refers, against whom they were filed, or whether (and, if so, how and when) defendants Baily and Locke became aware of the grievances. Accordingly, plaintiff's retaliation claim asserted against defendants Baily and Locke based on allegations concerning an incident that occurred on February 19, 2017, is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### f. June 20-21, 2018

Plaintiff's complaint alleges that on June 20, 2018, defendant Howell told plaintiff that he was tired of plaintiff filing grievances against Upstate C.F. staff and that he was going to "get" plaintiff. Compl. at 52. The next day at the end of breakfast, defendant Howell told defendant Hollenbeck that plaintiff had placed toilet paper covered in feces in his Sahor bag for defendant Howell to collect. *Id.* Defendant Hollenbeck then told plaintiff that he was going to search plaintiff's cell and take him "off of Ramadan," and summoned defendant Fletcher. *Id.* Defendant Fletcher and Salls then removed plaintiff from his cell and placed him in a holding cell, one cell away from inmate Rasell Reeder, an inmate who is known by Upstate C.F. staff to bang on metal surfaces inside his cell all day and all night as a means of torturing other inmates. *Id.* at 53. While plaintiff was confined inside the holding cell, defendants Gravlin, Salls, and Fletcher released a chemical agent into the cell. *Id.* at 54. The complaint

36

alleges that defendants Salls and Uhler retaliated against plaintiff on June 21, 2018, for plaintiff filing a previous lawsuit (*Barnes v. Fischer*, No. 13-CV-0164 (N.D.N.Y. filed Feb. 12, 2013)) against those individuals. *Id.* at 62. According to plaintiff, the actions of defendants Howell, Hollenbeck, Fletcher, and Gravlin were also motivated by retaliatory animus in light of previous grievances plaintiff had filed complaining of "mistreatment" while incarcerated at Upstate C.F. *Id.*

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendant Howell must respond to plaintiff's retaliation claim arising from allegations that he threatened to "get" plaintiff on June 20, 2018, and then falsely accused plaintiff of disposing of feces-laden toilet paper in his Sahor bag for defendant Howell to collect on June 21, 2018. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claim can survive a properly filed dispositive motion.

To the extent the complaint is construed as asserting retaliation claims against defendants Uhler, Hollenbeck, Fletcher, Gravlin, and Salls based on their conduct following defendant Howell's accusation on June 21, 2018, they are dismissed. While the complaint clearly alleges that defendant Howell's conduct was motivated by a grievance previously filed by plaintiff, there are no allegations that the actions defendants Hollenbeck, Fletcher, Gravlin, or Salls took were motivated by retaliatory animus. Instead, the allegations supporting the retaliation claim against defendants Hollenbeck, Fletcher, Gravlin, and Salls are inflammatory and conclusory and do not support a plausible cause of action. Moreover, with respect to defendant Uhler, there are no allegations in the complaint that he was involved in any way in the incident on June 21, 2018. Accordingly, plaintiff's retaliation claims asserted against

defendants Uhler, Hollenbeck, Fletcher, Gravlin, and Salls arising from the incident on June 21, 2018, are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### g. June 22, 2018

Plaintiff's complaint alleges that on June 22, 2018, upon returning plaintiff to his cell, defendant Eric Marshall grabbed plaintiff's right hand and bent his ring finger until it cracked. Compl. at 58. Earlier in the day, defendant Eric Marshall allegedly informed plaintiff that he had received the grievance plaintiff had filed against him, which is identified in the complaint as UST-63481-18. *Id.* at 55-56, 58. Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendant Eric Marshall must respond to plaintiff's retaliation claim arising from allegations that he assaulted plaintiff on June 22, 2018, in retaliation for plaintiff filing grievance number UST-63481-18. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claim can survive a properly filed dispositive motion.

### h. Defendants Wilson and White

Plaintiff's complaint alleges that, since plaintiff's return to Upstate C.F. on July 2, 2018, defendants Wilson and White have "embark[ed] on a vile cold-blooded campain in retaliation with a heartless culpable state of mind reckless disregard abandon for [plaintiff's] life, health, safety or welbeing submission of multiple calculated and maliciously false mental health referrals to foreshadow [him] as being a mentally unstable sociopathic or pathological feigner or the sort of absolutely no credibility." Compl. at 68 (errors in original). To the extent plaintiff purports to assert retaliation claims against defendants Wilson and White based on the

38

foregoing allegations, they are dismissed. The allegations are vague and inflammatory and do not describe any facts concerning the protected activity in which plaintiff engaged or any reason why defendants might have retaliated against him by generating false referrals to the mental health unit. Accordingly, plaintiff's retaliation claims asserted against defendants Wilson and White are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### i. Defendant Fitchette

Plaintiff's complaint alleges that defendant Fitchette instructed her subordinates to restrict plaintiff's photocopying and legal mail to $2.50 per week in retaliation for a grievance plaintiff "submitted on May 30, 2018 and a grievance UST-63540-18." Compl. at 70. There are no allegations, however, describing the contents of the grievances to which plaintiff refers, including whether defendant Fitchette was implicated in the grievances. Moreover, there are no allegations that defendant Fitchette was aware of the grievances or when defendant Fitchette began restricting plaintiff's photocopies and mailings in relationship to the grievances. Accordingly, because there are no facts plausibly alleging a causal connection between defendant Fitchette's conduct and plaintiff's filing of grievances, plaintiff's retaliation claim asserted against defendant Fitchette is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### j. Defendant Randal Smith

Plaintiff's complaint alleges that defendant Randal Smith retaliated against plaintiff by filing three misbehavior reports against him on October 14, 2016, October 19, 2016, and November 17, 2016. Compl. at 74. The misbehavior reports were issued in retaliation for a

grievance plaintiff filed against defendant Randal Smith on October 9, 2016, accusing defendant Randal Smith of abuse. *Id.* Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that defendant Randal Smith must respond to plaintiff's retaliation claim arising from the foregoing allegations. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claim can survive a properly filed dispositive motion.

### 4. Mail Interference

Plaintiff's complaint alleges that defendants Hollenbeck, Locke, and Jessica Page, as well as Joshua Walrath and Jamie Burroughs, removed "complaints out of mail box or not even putting mail in box and giving it to inmates."[13] Compl. at 26 (errors in original). These allegations are not sufficient to support a cognizable cause of action. Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019). The rule applies to represented and pro se litigants alike. *Harnage*, 916 F.3d at 141. "To satisfy this standard, the complaint must at a minimum, 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Id.* (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). Plaintiff's mail interference claim asserted against defendants Hollenbeck, Locke, and Jessica Page do not

---

[13] Although the complaint implicates Joshua Walrath and Jamie Burroughs in the mail interference claim, those individuals are not listed as two of the 106 defendants in the complaint. Compl. 1-4, 26. Accordingly, the Court does not construe the complaint to include Joshua Walrath and Jamie Burroughs as defendants in the action.

satisfy the notice pleading requirements because it is not clear from the complaint (1) whose mail defendants interfered with, (2) when defendants interfered, and/or (3) whether plaintiff was personally affected by the mail interference. The sparse allegations in the complaint do not adequately put defendants Hollenbeck, Locke, and Jessica Page on notice as to the basis of plaintiff's mail interference claim. Accordingly, the mail interference claims asserted against defendants Hollenbeck, Locke, and Jessica Page are dismissed for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("When a complaint fails to comply with the[] requirements [of Rule 8], the district court has the power, on motion or *sua sponte*, to dismiss the complaint[.]").

### 5. Due Process

#### a. Defendants Uhler, Woodruff, Zerniak, and Randal Smith

Plaintiff's complaint alleges that he was placed on fixed protective hatch cover ("FPHC") and retention strap orders on a number of occasions and for different periods of time. *See generally* Compl. Not unlike much of plaintiff's complaint, the allegations concerning the FPHC and retention strap orders are not particularly clear or complete. What follows are the discernible allegations concerning the orders derived from the complaint.

Plaintiff was placed on FPHC and retention strap orders for six unspecified years. Compl. at 15-16, 17. Plaintiff appealed to defendant Uhler on November 30, 2015, "seeking removal of the orders." *Id.* at 17. The orders were lifted by either defendant Zerniak or defendant Paul Woodruff on January 25, 2016. *Id.* at 18. Plaintiff was re-placed on FPHC and retention strap orders on or about February 9, 2016, at the recommendation of defendant Randal Smith based on a false misbehavior report issued to plaintiff by defendant

Hollenbeck.  *Id.* at 24.  The orders were "enforced by [defendants] Paul Woodruff and . . . Zerniak."  *Id.* at 24, 37.  Defendant Uhler arbitrarily maintained plaintiff on the FPHC and retention strap orders for 18-20 months.  *Id.* at 37.

To the extent the foregoing allegations could be construed as asserting substantive due process claims against defendants Uhler, Paul Woodruff, Zerniak, and Randal Smith for their imposition of or failure to lift the FPHC and retention strap orders, they are dismissed. Even assuming the truth of the allegations, inmates do not have a constitutionally protected liberty interest in being confined in an unshielded cell.  *See, e.g., Figueroa v. Storm*, No. 07-CV-0018, 2011 WL 1598922, at *6 (W.D.N.Y. Apr. 28, 2011) (citing *Breazil v. Barlett*, 998 F. Supp. 236, 243 (W.D.N.Y. 1997)); *DeMaio v. Mann*, 877 F. Supp. 89, 93 (N.D.N.Y. 1995); *Young v. Scully*, No. 91-CV-4332, 1993 WL 88144, at *3 (S.D.N.Y. Mar. 22, 1993).  In addition, the complaint fails to allege that the imposition of the FPHC and retention strap was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (internal quotation marks omitted).  Accordingly, plaintiff's substantive due process claims asserted against defendants against defendants Uhler, Woodruff, Zerniak, and Randal Smith are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b. Defendants Stickney, Friot, Liberty, Paul Woodruff, and Rodriguez

Plaintiff's complaint alleges that defendant Stickney presided over the disciplinary hearing held on September 26, 2016, in connection with a misbehavior report issued to plaintiff by defendant Blair.  Compl. at 74.  Plaintiff alleges that, during the disciplinary

hearing, defendant Stickney "depriv[ed] [plaintiff] of [his] right to summon evidence critical to [his] defense" and then "expell[ed] [plaintiff] from the proceedings and conducting [the] remainder of [the] hearing in absentia." *Id.*

Defendant Friot served as the hearing officer in connection with a misbehavior report issue to plaintiff by defendant Tants in July 2016. Compl. at 73. Defendant Friot was not impartial, predetermined plaintiff's guilt, and "relied on evidence outside of [the] record" in rendering his determination. *Id.*

Defendant Liberty conducted a disciplinary hearing in connection with a misbehavior report issued to plaintiff by defendant Randal Smith on October 14, 2016. Compl. at 74. Defendant Liberty was "bias[ed]" against plaintiff at the hearing and "denied [him] access to exculpatory videotape evidence." *Id.*

Defendant Paul Woodruff served as the disciplinary hearing officer concerning a misbehavior report issued plaintiff by defendant Randal Smith on October 19, 2016. Compl. at 75. Defendant Woodruff was also biased against plaintiff during the hearing and refused to permit plaintiff to present certain "critical grievance evidence." *Id.*

Defendant Rodriguez is alleged to have reviewed the disciplinary hearing determinations rendered by defendants Liberty and Paul Woodruff "and faild to remedy wrong of the flagrant violation of the [plaintiff's] constitutional rights." Compl. at 75 (errors in original).

Liberally construed, the foregoing allegations involving defendants Stickney, Friot, Liberty, Paul Woodruff, and Rodriguez purport to give rise to procedural due process claims. Fatal to those claims, however, is the absence of any allegation that plaintiff was denied a liberty interest as a result of defendants' conduct. In particular, there are no allegations

concerning whether plaintiff was found guilty (or not-guilty) at the conclusion of the disciplinary hearings, and, even assuming plaintiff was found guilty by the defendant-hearing officers, there are no allegations concerning the sanctions imposed by those defendants. Accordingly, the complaint fails to allege sufficient facts plausibly suggesting that plaintiff was deprived a liberty interest in connection with any of the disciplinary hearings described in his complaint. For that reason, plaintiff's procedural due process claims asserted against defendants Stickney, Friot, Liberty, Paul Woodruff, and Rodriguez are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6. Conditions of Confinement

Plaintiff's complaint alleges that between June 21, 2018 and June 26, 2018, he was on suicide watch in the OMH unit at Upstate C.F. Compl. at 67. Pursuant to policies promulgated by defendants Uhler and Waldron, while on suicide watch, plaintiff was housed in a cell that was illuminated by two six-foot long fluorescent lights 24 hours per day and subjected to constant observation by corrections officers. *Id.*

On June 26, 2018, plaintiff was transferred to Clinton C.F.'s OMHU. Compl. at 64. The conditions of plaintiff's confinement in the OMHU are described as follows: (1) constant artificial fluorescent illumination in cells; (2) constant exposure to frigid temperatures while inmates are clothed in sleeveless smocks; (3) no access to soap, toothpaste, toilet paper, wash cloths, towels, clothing, or recreation; (4) unsanitary conditions, including a mattress covered in feces, walls covered in urine and mucus, toilets covered in excrement, and other "filth[]" on the floor. Compl. at 66. Plaintiff was also exposed to a chemical agent that was directed at a neighboring inmate's cell on two occasions, burning plaintiff's eyes and causing

him to become nauseous. *Id.* at 66. Liberally construing the complaint, it alleges that defendant Rozenfeld and Deborah McCulloch, identified as an executive director, are aware of the "repulsive[] and . . . dehumanizing conditions" within the OMHU cells.[14] *Id.*

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff, 537 F.3d at 191*, the Court finds that defendants Uhler, Waldron, and Rozenfeld must respond to plaintiff's conditions of confinement claims arising from the foregoing allegations. This is not a ruling on the merits, and the Court expresses no opinion as to whether plaintiff's claims can survive a properly filed dispositive motion.

### 7. Access to the Courts

Plaintiff's complaint alleges that defendants Viau, Febi, Cheryl Dumas, Barse, and Fish have deprived plaintiff access to photocopies and/or are refusing to mail plaintiff's legal mail because he is indigent. Compl. at 69-70. Plaintiff's complaint fails to allege any facts plausibly suggesting that has suffered any injury from defendants' conduct. Although plaintiff alleges that the statute of limitations in connection with his habeas corpus petition is approaching in June 2019, *id.* at 70, no injury has occurred yet. In any event, it is worth noting that, despite the alleged interference by defendants Viau, Febi, Dumas, and Fish, plaintiff has managed to commence this litigation by filing a 77-page complaint and over 320 pages of exhibits. *See generally* Compl. Moreover, since the commencement of this action, plaintiff has submitted nine letters to the Court, including five requesting some type of relief.

---

[14] Although the allegations in the complaint implicate Executive Director Deborah McCulloch in the conditions-of-confinement claim concerning the OMHU cell, the complaint does not include that individual in the list of 106 defendants. Compl. at 1-4, 66. Accordingly, the Court does not construe the complaint as including that individual as a defendant in the action.

Dkt. Nos. 4-7, 9-13.  Without opining as to the merits of plaintiff's claim, it seems objectively clear that plaintiff has been managing to adequately communicate with the Court and litigate this action. Plaintiff's access to courts claims asserted against defendants Viau, Febi, Dumas, Barse, and Fish are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 8.  False Misbehavior Reports

Plaintiff's complaint is replete with allegations that certain defendants issued him false misbehavior reports.  *See, e.g.,* Compl. at 20, 25.  Claims arising from allegations that a defendant issued an inmate-plaintiff a false misbehavior report, on their own, are not cognizable under Section 1983.  *See, e.g., Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from falsely accused in a misbehavior report.").  Allegations concerning a false misbehavior report are generally only cognizable when there are other allegations triggering a First Amendment retaliation claim or Fourteenth Amendment due process claim.  *See, e.g., Boddie*, 105 F.3d at 862; *Freeman v. Rideout*, 808 F.2 949, 951 (2d Cir. 1986).  To the extent any allegation concerning a false misbehavior report in plaintiff's complaint is accompanied by other allegations of retaliation or the denial of due process, the Court has analyzed those allegations in Parts III.D.3 and III.D.5 of this Decision and Order.  The remaining allegations implicating the defendants concerning the issuance of a false misbehavior report do not give rise to a cognizable claim because they are stand-alone claims that do not implicate any of plaintiff's constitutional rights. Accordingly, to the extent plaintiff asserts stand-alone false misbehavior report claims against any of the defendants, those claims are dismissed for failure to state a claim upon which

relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 9. Harassment

Plaintiff's complaint is replete with allegations of harassment by defendants.  The following examples are illustrative (but not exhaustive) of the allegations found throughout the complaint: (1) defendant Hollenbeck verbally harassed plaintiff and "incit[ed other] inmates to accost [plaintiff]," Compl. at 21; (2) defendants Leclerc, Randal Smith, Sherri Debyah, Todd Debyah, John Tatro, and Fletcher are alleged to have provided other inmates with copies of plaintiff's grievances in an effort to incite violence against plaintiff, *id.* at 25-26, 28, 30-31, 45, 50, 51-52; (3) defendants Jessica Page, Santamore, Burwell, Deborah Marshall, Hollenbeck, Locke, Howell, and Russell verbally harassed plaintiff on different dates by calling him a "rat" in front of other inmates or facility staff, *id.* at 27, 31-32, 38, 47-49; (4) defendants Uhler, Woodruff, and Zerniak spoke disrespectfully towards plaintiff, *id.* at 55, 67; (5) plaintiff was moved to different cells by various defendants, including to a cell located near another inmate who corrections staff knew to have a penchant for harassing other inmates, *id.* at 16, 20-21, 40; and (6) defendants destroyed video recordings that captured incidents that are now the subject of this lawsuit, *id.* at 50-51.

It is well settled in this Circuit that verbal harassment and profanity, on their own and unaccompanied by any injury, do not give rise to a constitutional claim.  *See, e.g, Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) (McAvoy, J.) (citing cases).  Accordingly, any claim asserted in the complaint arising from allegations that a defendant called plaintiff a name or was otherwise verbally disrespectful toward plaintiff is dismissed for failure to state a claim upon which relief may be

granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

Plaintiff's claims arising from allegations that he was moved to different cells located closer to other inmates who harassed plaintiff are also dismissed because prison inmates have no liberty interest in being housed in particular location. *See, e.g., Matiyn v. Henderson*, 841 F.2d 31, 34 (2d Cir. 1988); *accord, McMahon v. Fischer*, 446 F. App'x 354, 357 (2d Cir. 2011). To the extent the complaint could be construed as asserting a claim complaining of the conditions of the confinement in a cell neighboring a harassing inmate, the complaint does not allege that plaintiff suffered any injury from his neighboring inmates or that he was made to endure conditions risking his health or safety for prolonged periods. Accordingly, any claims arising from allegations that plaintiff was moved to different housing cells are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

Lastly, plaintiff's complaint repeatedly alleges that various defendants are responsible for destroying video recordings that capture some of the incidents forming the basis of this lawsuit. It is generally unclear whether these allegations are intended to support an independent constitutional cause of action or whether they are included in the complaint to support plaintiff's Motion for Sanctions (discussed below in Part V of this Decision and Order). In any event, plaintiff does not possess a constitutional right to video recordings derived from DOCCS security cameras because neither the security cameras nor the recordings are plaintiff's personal property. Accordingly, to the extent that the complaint is construed as asserting a constitutional claim based on allegations that defendants destroyed video recordings, the claim is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

48

### 10. Remaining Defendants

Having carefully reviewed plaintiff's complaint, the Court concludes that the complaint does not allege sufficient facts plausibly suggesting that any of the named defendants not otherwise mentioned above in Parts III.D.1-9 of this Decision and Order are personally involved in the claims discussed is those sections. Moreover, the complaint fails to include any allegations involving any of the defendants not otherwise mentioned in Parts III.D.1-9 of this Decision and Order such that they plausibly suggest the existence of separate and independent causes of action. Accordingly, in addition to those claims dismissed above in Parts III.D.1-9 of this Decision and Order, all claims purportedly asserted against the following defendants are dismissed as frivolous and/or for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2) and 1915A(b)(1): (1) Annucci; (2) Bruen; (3) Quackenbush; (4) Koolen; (5) Kortright; (6) Caravetta; (7) Venettozzi; (8) Carrigan; (9) Blair; (10) Quinn; (11) Danforth; (12) Dominic; (13) Nelson; (14) Bernier; (15) Sauther; (16) Cathleen Cook; (17) Sherri Debyah; (18) Erika Marshall; (19) Kowalchuk; (20) Atkinson; (21) Conklin; (22) Todd Debyah; (23) Preve; (24) Deborah Marshall; (25) Clemo; (26) Nancy Smith; (27) Harrigan; (28) Jessica Dumas; (29) John or Jane Doe V, Clinton C.F. OMH counselor on June 29, 2018; (30) John Doe VI, Clinton C.F. OMH doctor or psychologist on July 2, 2018; (31) Tants; (32) Koenigsmann; (33) Baldwin; (34) Botsford; (35) McKoy; (36) Bellnier; (37) Labare; (38) Seaman; (39) Brown; (40) Morris; and (41) Burwell.[15]

---

[15] The Court notes that some of these defendants are alleged to have been personally involved in causes of action by way of their role as supervisors. For example, liberally construed, the complaint alleges that defendant Annucci became aware of the mistreatment plaintiff suffered at Upstate C.F. and did nothing to remedy it. Compl. at 14. There are no allegations, however, describing or identifying the particular mistreatment to which plaintiff refers, whether (and how) that mistreatment is constitutionally significant, how or when defendant learned of the mistreatment, and whether defendant Annucci had the authority and opportunity to remedy it. *Id.* These pleading deficiencies, as well as others, defeat plaintiff's attempts to assert constitutional

## IV.  MOTION TO AMEND

The filing of amended pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 15.  In relevant part, Rule 15(a)(1) provides that a party may amend its complaint once as a matter of course within 21 days after service of a responsive pleading or a motion under Federal Rule of Civil Procedure Rule 12(b).  Fed. R. Civ. P. 15(a)(1).  Rule 15(a) states that, "[i]n all other cases," leave to amend shall be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2)*; see Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord, Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993).

In this case, plaintiff seeks leave to amend his complaint to (1) include an allegation that defendants are withholding "full names of staff in 11-Building on April 12, 2016 2pm-10pm shift present during incident in question and are specific party names which need to be filled in ¶¶ 80-81 of complaint"; (2) insert defendant Erika Marshall's name in paragraph 147 of the complaint; and (3) amend the relief section of the complaint "to include ¶¶ (a)-(i) of pages 76-79 to supersed January 23, 2019 page 76 relief."  Motion to Amend at 2 (errors in original).

Plaintiff's first request is denied.  It amounts to a request to compel defendants to produce discovery, which is premature.  After initial disclosures have been exchanged by the parties, plaintiff will have an opportunity during discovery to request the information he seeks in order to identify the missing parties in paragraphs 80 and 81 of his complaint.  If and when plaintiff learns of the identities of those individuals, he may seek leave from the Court to amend his complaint.

---

claims against other administrative and/or supervisory defendants.

Plaintiff's second request is denied as futile. Even assuming defendant Erika Marshall is the individual to whom plaintiff's complaint refers in paragraph 147 of the complaint, the allegations in the complaint fail to plausibly allege a constitutional claim against defendant Erika Marshall. Accordingly, the proposed amendment is futile, and plaintiff's request is denied.

Plaintiff's third request is granted. The Clerk of the Court is directed to replace page 76 of the complaint with the "Amended Relief" pages accompanying plaintiff's Motion to Amend.[16] *See* Dkt. No. 6-1.

## V.    MOTION FOR SANCTIONS

### A.    Request for Sanctions

Plaintiff seeks sanctions against defendants based on allegations that they destroyed video recordings of certain incidents giving rise to this lawsuit that were captured by security cameras in prison facilities. *See generally* Motion for Sanctions; *see also* Compl. at 9. This request is denied as premature. Because no defendants have yet been served or appeared in the action, they are not on notice of plaintiff's request nor have they been provided an opportunity to respond to plaintiff's allegations. While it is true that, in connection with another action commenced by plaintiff in Franklin County Supreme Court, Supreme Court Justice Robert G. Main, Jr., concluded that DOCCS officials erred in failing to preserve certain video recordings capturing the cell extraction and escort on June 21-22, 2018, Justice

---

[16]  Plaintiff is hereby warned that any further requests for leave to amend his complaint must comply with rule 7.1(a)(4) of the Local Rules of Practice for this Court. In particular, plaintiff is required to "attach an unsigned copy of the proposed amended pleading to [his] motion papers," and the proposed amended pleading "must be a complete pleading, which will supersede the pleading sought to be amended in all respects." N.D.N.Y. L.R. 7.1(a)(4). Any future motion for leave to amend the complaint will be summarily denied in the event it does not comply with this rule.

Main rendered his decision after all of the parties had briefed the issue. Dkt. No. 10-2 (Motion for Sanctions Exhibits) at 14-15. Accordingly, plaintiff's request for sanctions concerning his allegations that defendants destroyed video recordings that should have been preserved is denied without prejudice.

## B. Request for Preliminary Injunction

Throughout plaintiff's complaint, and again within plaintiff's Motion for Sanctions, plaintiff requests the Court issue an injunction enjoining defendants from restricting his access to photocopies and postage. *See, e.g.,* Compl. at 9, 69; Motion for Sanctions at 1-2.

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. N.Y.S. Dep't of Fin. Servs.*, 769 F.3d 105, 119 (2d Cir. 2014) (quoting *Lynch v. N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009)). When the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is heightened. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (internal quotation marks omitted). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (internal quotation marks omitted).

"'[T]he single most important prerequisite for the issuance of a preliminary injunction'" is a showing that the moving party will suffer irreparable harm. *Bisnews AFE (Thailand) Ltd.*

*v. Aspen Research Grp. Ltd.*, 437 F. App'x 57, 58 (2d Cir. 2011) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). Speculative injury is not the province of injunctive relief. *City of L.A. v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that, "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.

Plaintiff has not alleged or demonstrated irreparable harm in this instance. Since the commencement of this action, plaintiff has filed several letters with the Court seeking various forms of relief. *See, e.g.,* Dkt. Nos. 4-7, 9-13. It therefore appears plaintiff is not being restricted access to the Court by prison officials based on his indigent status.[17] Accordingly, plaintiff's request for a preliminary injunction is denied.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP application (Dkt. No. 2) is **GRANTED**.[18] The Clerk shall provide the superintendent of Upstate Correctional Facility, the prison in which plaintiff is currently confined, with a copy of plaintiff's inmate authorization form (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay the entire

---

[17] Plaintiff has repeatedly informed the Court that he is in possession of approximately 1,000 pages worth of exhibits that he wishes to mail to the Court because they are "not safe in [his] possession." *See, e.g.,* Dkt. No. 13 at 1. Plaintiff further alleges that, because of the photocopying and postage restrictions imposed upon him at Upstate C.F., he is unable to mail those documents to the Court. *Id.* Plaintiff is advised that the Court's docket is not a repository for his records, and the Court will not review any submission except to the extent that plaintiff specifically identifies and references it in connection with a pending motion.

[18] Plaintiff should note that, although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;[19] and it is further

**ORDERED** that the Clerk shall provide a copy of plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Clerk of the Court shall modify the docket to add the corresponding Roman numeral to each of the Doe defendants as provided for above in Part III.B of this Decision and Order; and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is accepted for filing; and it is further

**ORDERED** that the following claims **SURVIVE initial review** and require a response: (1) Eighth Amendment excessive force and/or failure to intervene asserted against defendants Salls, Doe I, Derouchie, Truax, Santamore, Scott, Hoffinagle, Marshall Bush, Hollenbeck, Russell, Helms, Baily, Benjamin Page, Guarin, Eric Marshall, Jarrod Cook, Lincoln, Trombley, Ayers, Lamicia, LaBombard, Locke, Pryce, Law, Doe II, Doe III, and Doe IV; (2) Eighth Amendment conditions of confinement asserted against defendants Uhler, Waldron, and Rozenfeld; (3) Eighth Amendment deliberate medical indifference asserted against defendants Mandalaywala and Baker; and (4) First Amendment retaliation asserted against Randal Smith, Hollenbeck, Howell, and Eric Marshall; and it is further

**ORDERED** that plaintiff shall take reasonable steps through discovery to ascertain the identity of defendants Doe I, Doe II, Doe III, and Doe IV, against whom plaintiff's excessive force and failure to intervene claims arising from the use of force incident on June 22, 2018, are asserted. **Plaintiff's failure to timely serve those defendants will result in dismissal**

---

[19] While Section 1915 permits indigent litigants to commence a civil action in federal court without prepayment of the filing fee, those litigants "must subsequently pay the fee, to the extent [they are] able to do so, through periodic withdrawals from [their] inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b)); *Harris*, 607 F.3d at 21.

of the claims asserted against them and termination of those defendants from the action; and it is further

**ORDERED** that, within 30 days of the date of this Decision and Order, plaintiff shall submit to the Court (1) 30 copies of the complaint and exhibits for the United States Marshal to effect service upon defendants Salls, Derouchie, Truax, Santamore, Scott, Hoffinagle, Marshall Bush, Hollenbeck, Russell, Helms, Baily, Benjamin Page, Guarin, Eric Marshall, Jarrod Cook, Lincoln, Trombley, Ayers, Lamicia, LaBombard, Locke, Pryce, Law, Uhler, Waldron, Rozenfeld, Mandalaywala, Baker, Randal Smith, and Howell; and (2) 30 signed and completed USM-285 forms;[20] and it is further

**ORDERED** that, upon receipt from plaintiff of the documents required for service (i.e., copies of the complaint (and exhibits) and USM-285 forms), the Clerk of the Court shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Salls, Derouchie, Truax, Santamore, Scott, Hoffinagle, Marshall Bush, Hollenbeck, Russell, Helms, Baily, Benjamin Page, Guarin, Eric Marshall, Jarrod Cook, Lincoln, Trombley, Ayers, Lamicia, LaBombard, Locke, Pryce, Law, Uhler, Waldron, Rozenfeld, Mandalaywala, Baker, Randal Smith, and Howell.  The Clerk shall forward a copy of the summonses and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

---

[20]  The Court is cognizant of plaintiff's repeated allegations – found throughout his complaint, letters to the Court filed since the commencement of this action, and Motion for Sanctions – that he is being restricted access to photocopies of legal documents and postage for legal mail.  In that regard, the Court confirms that, as of the date of this Decision and Order, this case is OPEN and ACTIVE, and the Clerk is respectfully directed to provide plaintiff with an extra copy of this Decision and Order so that plaintiff may provide it to the appropriate staff at Upstate C.F. when attempting to obtain copies of his complaint and USM-285 forms.  The Court also notes that it is aware of the relevant DOCCS directives (i.e., DOCCS Directives 4421 and 2788) governing postage and legal photocopying for inmates who are unable to pay the costs in advance.  Plaintiff shall take the necessary steps to comply with those directives to obtain the necessary documents for service upon defendants.

**ORDERED** that, except as to the foregoing, the remaining claims asserted in the complaint are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE** from the docket the following defendants: Annucci, Bruen, Quackenbush, Koolen, Kortright, Caravetta, Liberty, Venettozzi, Rodriguez, Carrigan, Blair, Paul Woodruff, Quinn, Danforth, Fitchette, Kelsh, Dominic, Gravlin, John Tatro, Nelson, Bernier, Sauther, Cathleen Cook, Sherri Debyah, Erika Marshall, Kowalchuk, Wilson, White, Atkinson, Conklin, Waterson, Fletcher, Thomas Smith, Stickney, Todd Debyah, Preve, Jessica Page, Robert Paige, Deborah Marshall, Gary, Clemo, Healy, Champagne, Ellsworth, Nancy Smith, Harrigan, Fish, Barse, Febi, Cheryl Dumas, Jessica Dumas, Bryant, Fortin, Doe V, Doe VI, Doe VII, Malark, Viau, Friot, Tants, Zerniak, Koenigsmann, Baldwin, Botsford, McKoy, Bellnier, Leclerc, Labare, Seaman, Brown, Morris, and Burwell; and it is further

**ORDERED** that a response to the complaint shall be filed by defendants Salls, Derouchie, Truax, Santamore, Scott, Hoffinagle, Marshall Bush, Hollenbeck, Russell, Helms, Baily, Benjamin Page, Guarin, Eric Marshall, Jarrod Cook, Lincoln, Trombley, Ayers, Lamicia, LaBombard, Locke, Pryce, Law, Uhler, Waldron, Rozenfeld, Mandalaywala, Baker, Randal Smith, and Howell or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff's Motion to Amend (Dkt. No. 6) is **GRANTED in part and DENIED in part** as set forth above in Part IV of this Decision and Order; and it is further

56

**ORDERED** that the Clerk of the Court shall replace page 76 of the complaint with the four-page "Amended Relief" section of plaintiff's Motion to Amend (Dkt. No. 6-1); and it is further

**ORDERED** that plaintiff's Motion for Sanctions (Dkt. No. 10) is **DENIED without prejudice**; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with rule 7.1 of the Local Rules of Practice for the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** the Clerk serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

DATED: April 8, 2019

Thomas J. McAvoy
Senior, U.S. District Judge