# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JESSIE J. BARNES,

                                        Plaintiff,

    v.

                                          9:19-CV-109
MR. ANTHONY J. ANNUCCI, et al.,              (TJM/ATB)

                           Defendants.

JESSE J. BARNES, Plaintiff, pro se
KOSTAS D. LERIS, Asst. Attorney General, for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Thomas J. McAvoy, Senior United States District Judge. Presently before the court is a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), filed by defendant Annucci. (Dkt. No. 206). Plaintiff has responded in opposition to the motion. (Dkt. No. 223). For the following reasons, this court agrees with defendant Annucci and will recommend dismissal of the complaint against him.

## I. Facts

The amended complaint in this action (Dkt. No. 166) is extremely long and detailed. The court will recite only the facts relevant to defendant Annucci, who is the only moving defendant herein. Plaintiff is challenging the implementation, and enforcement of Department of Corrections and Community Supervision ("DOCCS") regulations relating to the use of Fixed Protective Hatch Covers ("FPHC") and Retention Straps ("RS"). 7 N.Y.C.R.R. § 305.5 ("Closing cell hatch covers"); 7

N.Y.C.R.R. § 305.4 ("Restraint Orders").[1]

Plaintiff essentially claims that these regulations are "vague," which allows their imposition for years with no due process prior to their imposition and with no procedure for appeal after such placement. (Amended Complaint ("AC") at 39-56, ¶¶ 177, 185-86, 188, 195, 197-203, 230). Plaintiff alleges that these restrictions were imposed on him at various times and for up to six[2] years at Upstate Correctional Facility ("Upstate"). Plaintiff claims that the imposition of these restrictions for such an extended period of time rises to the level of unconstitutional conditions of confinement.

In addressing plaintiff's motion to amend his complaint, I allowed claims alleging that both the FPHC and RS orders resulted in unconstitutional conditions of confinement as against defendants Annucci, Woodruff, Uhler, Bell, Fletcher, Salls, Derouche, and Hollenbeck. (Dkt. No. 165 at 20). I also allowed due process claims to proceed as against Annucci, Woodruff, Uhler, and Bell. (Dkt. No. 165 at 21). The only claims pending against defendant Annucci are Eighth Amendment conditions of confinement claims and due process claims.

With respect to defendant Annucci, the amended complaint alleges the following:

> 177. Defendant Anthony J. Annucci, [sic] implementation or
> authorization of . . . "Upstate" executive officials [sic] daily
> routine use operations and enforcement of . . . (FPHC) and
> Retention Strap Orders vague, impermissible or defacto

---

[1] Plaintiff refers to these as Retention Strap Orders.

[2] Plaintiff's response to the defendant's motion to dismiss states that the restrictions were imposed for seven years. (Dkt. No. 233 at 1). The difference does not impact this court's decision based on lack of personal involvement.

> governmental policy 7 NYCRR § 305.5 devoid of any "lawful
> process" due to Plt or any other prisoner under enforcement of
> these orders of following [sic]." . . . .

(AC ¶ 177). Paragraph 177(a) alleges that there is no appeal process to review the

"Upstate" prison authorities' "unending" enforcement of the FPHC or RS orders.

Paragraphs 177(b) and 177(c) state that all memoranda for "enforcement" of these

orders "remain in place endlessly for six (6) years or more by Upstate Deputy

Superintendent of Security," who apparently states that the orders will remain in place

until he withdraws them. Paragraph 177(d) states that there are no "adequate" periodic

reviews of either the FPHC or the RS orders to determine whether continued imposition

is appropriate. Instead plaintiff refers to a lack of records supporting "hoax reviews"

which apparently do not contain any justifiable institutional safety and security basis

for continuing imposition of these orders.

The amended complaint contains additional paragraphs relating to the placement

of these orders against plaintiff, beginning in 2010, but there are no further references

to defendant Annucci in the amended pleading. The remaining paragraphs challenging

the regulations all refer to defendant Uhler and other defendants who have not joined in

this motion to dismiss.

## II.    **Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain

sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action,

3

supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's consideration is limited to the factual allegations as stated in the complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, and matters of which the court can take judicial notice. *Portillo v. Webb*, No. 16 Civ. 4731, 2017 WL 4570374, at *1 (S.D.N.Y. Oct. 11, 2017) (quoting *Brass v. Am. Film Tech.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). A court may take judicial notice of a public record pursuant to Fed. R. Evid. 201(b). *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

## III. Personal Involvement

### A. Legal Standards

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit articulated standards for courts to use when determining personal involvement or supervisory liability.[3]

---

[3] These factors were:
> (1) the defendant participated directly in the alleged constitutional violation;
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
> (3) the defendant created a policy or custom under which

4

However after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the factors articulated in *Colon* were called into question. District courts, including the Northern District of New York[4] noted the possibility that the *Colon* factors were no longer viable, but that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y.2011)); *Young v. Choinski*, 15 F. Supp. 3d 172, No. 3:10-CV-606, 2014 WL 962237, at \*10–12 (D. Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

Recently, pursuant to *Iqbal*, and in the context of the appeal of a qualified immunity issue, the Second Circuit has specifically revised its standard for determining personal involvement or supervisory liability, finding that the *Colon* factors are no

---

                 unconstitutional practices occurred, or allowed the continuance of such a
                 policy or custom;
                 (4) the defendant was grossly negligent in supervising subordinates who
                 committed the wrongful acts; or
                 (5) the defendant exhibited deliberate indifference to the rights of
                 inmates by failing to act on information indicating that unconstitutional
                 acts were occurring.
*Colon*, 58 F.3d at 873.

    [4] *See e.g. Vance v. State of New York*, No. 9:19-CV-748 (BKS/ATB), 2020 WL 7481585, at \*3 & n.3 (N.D.N.Y. Nov. 30, 2020) (discussing cases), *report-recommendation adopted*, 2020 WL 7480955 (N.D.N.Y. Dec. 18, 2020).

longer controlling and articulating the proper standard for the courts in this circuit to

utilize. *Tangreti v. Bachmann*, No. 19-3712, __ F.3d __, 2020 WL 7687688, at *4-6 (2d

Cir. Dec. 28, 2020).

Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no

"special" rule for supervisory liability. *Id.* at *6.

> Instead, a plaintiff must plead and prove "that each
> Government-official defendant, through the official's own
> individual actions, has violated the Constitution." *Iqbal*, 556
> U.S. at 676 . . . . "The factors necessary to establish a [§ 1983]
> violation will vary with the constitutional provision at issue"
> because the elements of different constitutional violations
> vary. *Id*. The violation must be established against the
> supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676).  The supervisor must have committed the violation

him or herself, not by the supervision of others who committed the violation. *Id.*

Likewise, the supervisor must personally display the requisite state of mind, depending

on the violation at issue. *Id.*[5]

## B.    Analysis

Although plaintiff claims that the regulations in question are "vague" and invalid,

he does not ask for the regulations to be invalidated.  Instead, he asks only for monetary

relief for the alleged damage that defendants caused him. (AC ¶ 231). Plaintiff has

---

[5] As discussed in Senior District Judge Thomas McAvoy's April 8, 2019 Decision and Order reviewing plaintiff's original complaint, to be liable for an Eighth Amendment conditions of confinement claim, a defendant must expose a plaintiff to conditions that he knows may result in "unquestioned and serious deprivations of basic human needs" with "deliberate indifference." Dkt. No. 14 at 19 (*citing*, inter alia, *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996)).  To be liable for a due process violation, a defendant must intend to deprive a plaintiff of an actual liberty interest without affording him or her sufficient process.  *Id.* at 19 (*citing*, inter alia, *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000)).

failed to plausibly allege defendant Annucci's personal involvement in the violation of plaintiff's constitutional rights under the *Tangreti* standard.[6]  Plaintiff mentions defendant Annucci only briefly in the amended complaint. Other than plaintiff's conclusory claim that defendant Annucci was responsible for "implementation" of the regulation itself, he states absolutely no basis for finding that defendant Annucci had anything to do with the implementation or the continuation of the restrictions against plaintiff.[7]  The facts as stated in the amended complaint belie any such involvement. Plaintiff makes it quite clear that it was defendant Uhler and others at Upstate who imposed the restrictions and who allegedly extended the restrictions without justification. (AC ¶¶ 177(b), 177(c)) ("endless" enforcement of the restrictions by Upstate Deputy Superintendent of Security).

The Amended Complaint also states that in 2009, defendant Uhler implemented a "revised" Upstate Special Housing Unit ("SHU") manual, which included sections for FPHC and RS orders. (AC ¶ 178).  Plaintiff claims that these revisions were "pure wicked, evil and unfair, vague, impermissible, and defacto Governmental policy," which defendants "Earl Bell, Donald Uhler, and Paul Woodruff" have used "daily."

---

[6] Personal involvement is required for the assessment of damages under section 1983, not for injunctive relief.  However, plaintiff does not request injunctive relief as against defendant Annucci.  Thus, this court's assessment relates only to the assessment of damages.

[7] In the most liberal interpretation of plaintiff's allegations, he could be alleging that the regulations are written in such a way that the Upstate defendants were able to abuse them in plaintiff's case by extending the restrictions "endlessly."  However, even assuming defendant Annucci's involvement in writing or promulgating these regulations, after *Tangreti*, such a claim may not establish personal involvement because plaintiff does not allege that defendant Annucci had the requisite state of mind for violations of either the Eighth Amendment or Due Process against plaintiff himself.

(*Id.*)  Defendant Annucci is not mentioned as having had any responsibility for this "revision" or for its use against the plaintiff.

Plaintiff argues that defendant Annucci is personally responsible based on the law prior to *Tangreti*, and does not address the defendant's argument that such law is no longer applicable in the personal involvement analysis. (Dkt. No. 233).  Plaintiff argues that defendant Annucci must be maintained as a defendant because this court allowed the claim to proceed in deciding plaintiff's motion to amend his complaint, essentially finding that plaintiff stated a claim.[8]

 Based upon the substantial change in the standard utilized by the court to assess personal involvement, the court must apply the current law, and as a result has changed its initial determination with respect to defendant Annucci.  Plaintiff does not state a claim for defendant Annucci's personal involvement in any violation of plaintiff's Eighth Amendment rights relating to the FPHC and RS orders or in any procedural due process claim that plaintiff might have based on claims that officers at Upstate conducted "bogus" reviews of the imposition of these orders.

Plaintiff alleges that the regulations themselves do not contain any mechanism for review.  According to plaintiff, defendant Annucci would bear responsibility for not providing for review of the implementation of FPHC and RS orders.  As defendant

---

[8] Plaintiff has attached a Report Recommendation from one of plaintiff's previous cases, written by Magistrate Judge Randolph Treece and adopted by Senior United States District Court Judge Gary L. Sharpe. *Barnes v. Fischer*, No. 9:13-CV-164, 2014 WL 5293672 (N.D.N.Y. Oct. 15, 2014).  In this previous case, Magistrate Judge Treece denied a partial motion to dismiss by defendant Fischer, finding that plaintiff sufficiently alleged various of the *Colon* factors.  First, as stated above, after *Tangreti*, the court may no longer use the *Colon* analysis.  Moreover, this court notes that it appears from Magistrate Judge Treece's recitation of plaintiff's allegations, there were substantially more facts asserted against the supervisory defendants than against defendant Annucci in this case. *Id.* at *6.

points out, the exhibits attached to plaintiff's amended complaint show that a review

mechanism for restraint orders did exist, that plaintiff wrote to defendant Annucci's

office, but was told that he needed to file a grievance regarding his complaints.  Some

of plaintiff's letters were written to defendant Uhler with a "cc" to the "Commissioner."

(*See e.g.* Dkt. No. 166-8 at 1-3). The letters responding to plaintiff's concerns were

signed by designees of defendant Annucci, and it does not appear that they were

reviewed by defendant Annucci himself.[9] (*See e.g.* Pl.'s Ex. 167, 180) (Dkt. Nos. 166-8

at 6, and 46, 48 (no exhibit numbers listed); 166-9 at 1-7).  One of the regulations cited

in his letters is section 305.4(c).  A review of the cited regulation shows a review

procedure for the restraint orders is provided in the regulation itself.[10] 7 N.Y.C.R.R. §

305.4(c) ("The order and any renewal thereafter must briefly state the reason(s) for the

order or renewal and contain the following notice to the inmate: "You may write to the

---

[9] Even before *Tangreti*, writing letters to supervisory officials that were given to other officers to investigate was not sufficient to establish personal involvement. *See Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (writing a letter of complaint does not suffice to show personal involvement where the official receives a letter and passes it on to a subordinate for response or investigation).

[10] The court notes that plaintiff cites only section 305.5 with respect to FPHC orders and claims there is no provision for review.  Section 305.5 states that the appropriate staff may impose an FPHC order only if a "deprivation" order has been obtained. 7 NYCRR § 305.5(a).  This section must be read together with section 305.2, entitled "Deprivation Orders," which provides for extensive review of the necessity for such orders, including daily review by superior officers with notice to the inmate. 7 NYCRR § 305.2(a)-(g). The regulation specifically provides that the inmate shall be told that he may write to the deputy superintendent for security or his designee to make a statement about the need for continuing such order. *Id.* § 305.2(d).  Even though N.Y. Correct. Law § 112(1) gives the commissioner the power to make rules and regulations, plaintiff's allegation that he was deprived of the ability to review his FPHC orders may not be attributed to defendant Annucci, based on his possible involvement in writing or promulgating these regulations.  The court notes that defendant Annucci was appointed as acting Commissioner of DOCCS on May 1, 2013, although he was the Executive Deputy Commissioner since 2007. https://doccs.ny.gov/acting-commissioner-anthony-j-annucci.

deputy superintendent for security or his/her designee to make a statement as to the need for continuing the restraint order.") In the letters sent by the Commissioner's office, plaintiff was also told that he could file a grievance to challenge the FPHC and RS orders.[11] (Pl.'s Ex. 180 at 1, 4, 6).

Plaintiff has filed grievances in the past, challenging the same restrictions, further supporting defendant Annucci's lack of personal involvement in either the imposition of the restrictions on plaintiff or any claim that the regulations lack an appeal process.[12] *See Barnes v. Fischer*, 109 A.D.3d 1054 (3d Dep't 2013) ("Appeal from a judgment of the Supreme Court (Zwack, J.), entered February 28, 2012 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review two determinations of the Central Office Review Committee denying petitioner's grievances.")

Plaintiff's claims that ***Upstate*** defendants abused the system or created unconstitutional conditions of confinement by endlessly extending restrictions are not related to defendant Annucci's conduct or his state of mind in "implementing" these regulations.[13] Plaintiff does not state a plausible claim that defendant Annucci was

---

[11] Plaintiff's letters also complained of "staff harassment" in conjunction with these orders, and he was told to file a grievance. (Pl.'s Ex. 180 at 6). Without allegations stating a plausible claim that defendant Annucci had the requisite state of mind, any claim of Upstate "staff harassment" regarding the above procedures may no longer be attributed to defendant Annucci under *Tangreti*.

[12] The court notes that in plaintiff's 2017 letter to the Commissioner's office, plaintiff did not cite the regulation that governs FPHC, which is section 305.5 (Closing cell hatch covers). However, plaintiff did challenge the imposition of the FPHC in his New York State Article 78 proceeding in 2013.

[13] Plaintiff's response contains a statement that he needs further discovery to establish defendant Annucci's personal involvement and cites F. R. Civ. P. 56 which is not relevant to a motion to dismiss under Rule 12(b)(6). This court has based its decision on the face of the amended complaint

personally involved in any of the constitutional violations alleged by the plaintiff which were allowed to proceed by the court.[14]  Thus, any claim for damages against defendant Annucci must be dismissed.[15]

 **WHEREFORE**, based on the findings above, it is

 **RECOMMENDED**, that defendant Annucci's motion to dismiss (Dkt. No. 206) be **GRANTED**, and the amended complaint be **DISMISSED IN ITS ENTIRETY WITHOUT[16] PREJUDICE AS AGAINST DEFENDANT ANNUCCI**.

 Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d

---

and plaintiff's failure to state a claim against defendant Annucci.  Plaintiff's amended complaint contains hundreds of pages of exhibits, none of which support his claim that defendant Annucci was responsible for the imposition or the continuation of the restrictions alleged by plaintiff.  Plaintiff has not indicated in his response what additional discovery would support his claims against Annucci, but as stated below, the court is recommending dismissal without prejudice.

[14] As an example, plaintiff's Exhibit No. 173 is a February 2017 "retention strap request" from Sgt. Derouchie to DSS Woodruff based on a misbehavior report filed against plaintiff. (Dkt. No. 166-8 at 35-36).  Such requests are made in the facility, and there is no indication that they involve officials at the level of the Commissioner.

[15] As stated above, plaintiff makes only claims for damages in this case.  Thus, the court is not making any determination of whether defendant Annucci could have been named for purposes of injunctive relief.

[16] Although I am recommending dismissal without prejudice in an abundance of caution and liberality because the standard for personal involvement has changed since plaintiff first filed his amended complaint, the court is skeptical that plaintiff will be able to amend his complaint to allege the personal involvement of defendant Annucci based on the facts that he alleges make up the basis for his claims.  However, the court does not completely foreclose such a possibility.

Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  June 3, 2021

Hon. Andrew T. Baxter
U.S.  Magistrate Judge